## ARCHIBALD McNEIL & SONS v. UNITED STATES (two cases).

Circuit Court of Appeals, Third Circuit. July 6, 1928.

Nos. 3779, 3780.

Election of remedies ⬯3(4)—Shipper of coal diverted to others by government held entitled to full damages from government less amount received in settlement from divertees, notwithstanding settlement with divertees.

Where United States, under proclamation of the President of October 30, 1919, seized coal shipped by plaintiff to foreign purchasers for use of others, and when asked to pay therefor referred plaintiff to divertees, who also refused to pay value of coal, but agreed to pay a much less sum in full settlement, *held* that plaintiff, in accepting divertees' offer, had no freedom of choice within ordinary rules respecting election, and was entitled to recover full damages from United States, less amounts received from divertees.

Woolley, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Eastern District of Pennsylvania; Oliver B. Dickinson, Judge.

Actions by Archibald McNeil & Sons against the United States. Judgments for plaintiff for nominal damages (23 F.[2d] 123), and plaintiff brings error. Modified and remanded.

See, also, 1 F.(2d) 39.

George Demming, of Philadelphia, Pa., for plaintiff in error.

George W. Coles, U. S. Atty., and Mark Thatcher, Asst. U. S. Atty., both of Philadelphia, Pa., and W. S. Ward, of Washington, D. C., for the United States.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

BUFFINGTON, Circuit Judge. In the court below, McNeil & Sons brought suit against the United States to recover the value of cars of coal commandeered or taken, as is alleged, by the latter, and never paid for. The sequence of acts by the parties to this suit was as follows: McNeil & Sons, who were under contract to deliver certain coal they had sold to the Netherlands and Swedish government, shipped the carloads here involved at various times between October 31, 1919, and March 31, 1920, on various railroads. For this coal they were to be paid at the average price of $7.25 per ton f. o. b. piers. By virtue of the proclamation of the President of the United States of October 30, 1919, reinstating the former rules and regulations of the Fuel Administrator, this coal was thereafter seized by the government, thereby causing a loss to McNeil & Sons of said $7.25 per gross ton. No attempt or offer of the United States was made to make payment for the coal under provisions of section 10 of the Lever Act (Comp. St. § 3115⅛ii). After certain steps, to which reference will be hereafter made, McNeil & Sons brought suit against the United States to recover this value of said coal. Jury was waived, and the case tried by a judge, who found the coal had been taken as aforesaid by the United States; that during the months of November and December, 1919, and January and February, 1920, no market for coal existed and McNeil & Sons were unable to get coal from any source to replace the coal taken, and that in March there was some market of which the value was stipulated. It will thus be seen that the plaintiffs under such facts and acts of the parties had a cause of action to recover from the United States the damages they had sustained by reason of its taking their coal, and on proof of such facts, which are not questioned, it was entitled to so recover unless the government showed that in some way, payment, release, etc., such action and the damages incident thereto was satisfied. Such defense the United States seeks to make by reason of certain acts of third parties, to which we now refer.

When requested to pay for this coal, the United States denied all liability therefor,

and there is no contention that the claim of McNeil & Sons for payment and the denial of the United States of liability for payment has been in any way affected by what the plaintiff and defendant did or agreed with each other. It also appears that whatever was done between third parties and McNeil & Sons was done by themselves, and that the United States was not a party to any agreement they made, paid no consideration therefor, nor was it led to take any action or refrain from taking any action. The facts were that the United States had suffered the coal it took from McNeil & Sons to be used by third parties, but when asked, and justly so, by the latter to pay for it, denied all liability therefor, and referred them for payment to the persons to whom it had turned over the coal. Following out the directions so given, McNeil & Sons found the persons to whom they had been referred for payment refused to pay the value of the coal the government had taken, but agreed to and did pay a much less sum for the coal, but only on the condition the coal was billed to them at their exacted price and McNeil & Sons would give them a release from liability for it and a receipt in full therefor. We fail to see how this in any way affected the status or liability of the United States. McNeil & Sons conceded that the money received from these third parties should correspondingly reduce and lessen the liability of the government, and to that extent what was done benefited, instead of injured, the government. Nor, as we have seen, for what was done between McNeil & Sons and these third parties, the government paid no consideration, lost no right, and assumed no additional liability and obtaining, as they do, a pro tanto reduction of the damages for which they are liable, they are in no position to say that this partial extinguishment of their liability for damages, resulting from a course they urged, should now be held to extinguish their original liability for their original taking of the coal. Such being the facts, we are of opinion that the trial judge, when he found as he did a verdict in favor of McNeil & Sons—a verdict from which the government took no appeal—was in error when, instead of assessing the actual damages at the stipulated sum, he assessed mere nominal ones. In reaching that conclusion, we have not based our decision on other facts in the record which, while possibly no legal basis for our holding, afford ground for satisfaction that we are not compelled to arrive at a different conclusion. The court below found: That "plaintiff's entire assets, capital, and property were tied up and engaged in said coal and export business. * * * All of said coal was taken in cars while in transit to Tidewater or while standing in cars at Tidewater waiting for transshipment into ships chartered by the plaintiff. That this was done in the form of causing the coal to be delivered to others than the consignees and shown on this record as 'divertees.' * * * That, as the direct and immediate result of the seizure and requisition of its coal, thus described, plaintiff was put in the direst financial and business distress, and was confronted with business bankruptcy. * * * As, however, the position of the United States was that it had merely 'diverted,' but had not 'taken,' it repudiated all liability to pay or at all events refused to make any payment in full or any percentage on account. This meant nothing less than complete paralysis of the plaintiff's activities and an early business demise."

These findings, together with others to which reference could be made, show that this was not the ordinary case of an election where there is freedom of choice, but one where the party who says there was an election has by a refusal to meet its just obligation itself created a condition where there was practically no freedom of choice and no alternative save financial ruin. In so far, therefore, as the court below found a verdict in favor of the plaintiff, it is sustained, but the record will be remanded to assess the damages in the amount stipulated, which is the damage sustained by the taking by the United States less amounts received from the divertees.

WOOLLEY, Circuit Judge, dissents.